# Exhibit 13

On-Scene Consulting

November 16, 2020

Mr. Dale K. Galipo, Esq.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367

**Federal Rules of Civil Procedure 26 (a) (2) (B) Report**

**Patricia Lopez as Personal Representative for the ESTATE OF ANTHONY LOPEZ; and PATRICIA LOPEZ and CAESAR LOPEZ, surviving parents of ANTHONY LOPEZ, deceased, Plaintiffs,
vs.
CITY OF MESA, HEATH CARROLL; and DOES 1-10, inclusive, Defendants.
Case No. CV-19-04764-PHX-DLR.**

Dear Mr. Galipo,

Thank-you for retaining me to analyze and render opinions regarding the July 21, 2018, Officer-Involved Shooting of Mr. Anthony Lopez by Mesa Police Department Police Officer Heath Carroll, No. 21478, at 1198 S. Dobson Road, Mesa, Arizona 85202. Pursuant to the requirements of Rule 26, I have studied reports, photographs, Mesa Police Department Documents, Transcriptions of Digitally Recorded Depositions, and other material (as listed under Materials Reviewed) provided to me thus far regarding this case. Please be advised that if additional documents related to this matter are provided, it may be necessary to write a supplemental report in order to refine or express additional opinions. It is also necessary to state at the beginning of this report that I do not make credibility determinations in expressing my opinions.

Scott A. DeFoe
Principal
On-Scene Consulting, LLC

Page **1** of **33**

Note:  None of my opinions are intended to usurp the province of the jury and are not stated as ultimate issues.  Rather, my opinions involve the consistency of the officers' actions with standard police practices.

**Opinions:**

### Opinion Number 1

It is my opinion that Mesa Police Department Police Officer Jenna Thranum, No. 20685, made a prudent tactical decision to turn to the right and back away in a westerly direction away from the Kia Sorento, when she believed that Mr. Anthony C. Lopez may not comply with Mesa Police Department Police Officer Heath Carroll's, No. 21478, commands to not put the vehicle in drive.  Patrol officers must constantly assess and reassess the level of risk throughout a vehicle stop.

In addition, it is my opinion that Mesa Police Department Police Officer Jenna Thranum's decision to tactically redeploy placed her in a position of advantage.  Based on my review of the facts, photographs and BWC's footage in this matter, in the event that Mr. Anthony C. Lopez drove forward or drove backwards as he did in this matter, Police Officer Jenna Thranum was in position of safety and not in the path of Mr. Anthony C. Lopez' vehicle.  Further, police officers are trained to step out of the path of a vehicle the officer thinks might move.

Lastly, I base my opinion on my twenty-eight years of law enforcement experience where I have conducted thousands of Vehicle Stops as Primary Officer, Secondary Officer and as a Supervisor.

### Opinion Number 2

It is my opinion that Mesa Police Department Police Officer Jenna Thranum, No. 20685, responded as trained by tactically redeploying to a position where she would not be in the path of Mr. Anthony C. Lopez' vehicle and <u>did not</u> use lethal force by firing her handgun at Mr. Anthony C. Lopez or at his vehicle.  It was appropriate for Officer Thranum not to use deadly force in this situation.

In addition, it is my opinion that "Shooting at or from Moving Vehicles," which are shots fired at or from a moving vehicle, are rarely effective.  Officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants.  An officer should only discharge a firearm at a motor vehicle or its

occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others.  Officers should not shoot at any part of the vehicle in an attempt to disable the vehicle.  "Shooting at or From Moving Vehicles" has shown to be a poor tactic in most scenarios.  If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle.

In addition, it is my opinion that Mesa Police Department Police Officer Jenna Thranum, complied with Mesa Police Department Policy Manual, Use of Force, Firearms Use, Reporting Protocol, DPM 2.1.45, Effective Date 5/19/17, (Mesa/Lopez 001151-1154):

**Shooting at a Moving Vehicle/Occupant:**

A Department member shall not discharge a firearm at an occupant of a moving vehicle unless the officer reasonably believes that:
- The subject poses an immediate threat of death or serious physical injury to prevent the death or serious physical injury to the officer or another person; **AND** there is no reasonable alternative course of action for the officer or other innocent persons.
- If at all possible, an officer threatened by an oncoming vehicle shall move out of its path and instead of discharging a firearm at it or any of its occupants.
- Discharging a firearm at a vehicle solely in an attempt to disable the vehicle is generally prohibited.
- Bullets fired at a moving vehicle are extremely unlikely to stop and disable the moving vehicle.

If it becomes necessary for officers to shoot at a moving vehicle, the following ramifications shall be considered:
- Moving vehicles present a rapidly changing field of fire.
- If the driver is incapacitated, the vehicle would be uncontrolled.
- The action could create a danger to the public that outweighs the reason the deadly force was initially used.

In addition, I base my opinion on the following facts and testimony in this matter:
- According to Mesa Police Department Police Officer Jenna Thranum, when she thought the vehicle was going to move, she stepped to the side and then to the back of the vehicle, (Deposition Transcript of Police Officer Jenna Thranum, Page 23).

- According to Mesa Police Department Police Officer Jenna Thranum, she was aware that there was a bullet exit hole or hole in the driver's side door of the vehicle and she is thankful that she was not standing in that area at the time of the shooting, (Deposition Transcript of Police Officer Jenna Thranum, Page 52).
- According to Police Officer Heath Carroll, he is aware that one of his bullets exited the driver's side of the vehicle, (Deposition Transcript of Police Officer Heath Carroll, Page 77).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## Opinion Number 10

It is my opinion that the City of Mesa provides inadequate training to its police officers, including providing inadequate training to Officer Carroll with respect to the use of deadly force and shooting at motor vehicles and their occupants. It is also my opinion that the City of Mesa ratified the shooting of Mr. Anthony C. Lopez and the conduct of Officer Carroll surrounding the shooting.

I base this opinion on my review of the record in this matter. Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## My Qualifications for Reviewing this Case:

My opinions are based on my education, training, and experience. Upon my graduation in June 1988 from Northeastern University in Boston with a Bachelor's Degree in Criminal Justice, I was hired as Criminal Investigator/Special Agent GS-1811. Upon completion of Criminal Investigator/Basic Agent School at the Federal Law Enforcement Training Center (FLETC), 6-Month academy, I was assigned to the Organized Crime Drug Task Force where I functioned as an agent and undercover operative. The investigations focused on targeting criminal organizations that were involved in large scale narcotic smuggling and money laundering operations.

I was assigned to the Office of the Special Agent In-Charge, in San Francisco from August 1988 until I joined the Los Angeles Police Department in November of 1989. While in the academy, I was selected by the staff to be my Recruit Class Leader. Upon my graduation from the LAPD Academy, I was assigned to 77th Division. In addition to

and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. Coordinated all security efforts to ensure safety at Special Events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis.

From March 2016 to September 5, 2017, I was the Director of Security at L&R Group of Companies. Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments and projected developments throughout the United States. Conducted and/or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft. Conducted ongoing Risk and Vulnerability Assessments to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. Coordinated all security efforts to ensure safety at Special Events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis as well as respective law enforcement agencies throughout the United States on security matters.

      Attached are my curriculum vitae, listing of testimony and fee schedule.

*[signature]*

Scott A. DeFoe