**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Lopez and Caesar Lopez,<br><br>Plaintiffs,<br><br>v.<br><br>City of Mesa and Heath Carroll,<br><br>Defendants. | No. CV-19-04764-PHX-DLR<br><br>**AMENDED ORDER** |

Officer Heath Carroll shot Anthony Lopez ("Decedent") at a traffic stop on July 21, 2018. Plaintiffs, Decedent's parents and estate, brought this suit, arguing that the shooting was unjustified. Defendants City of Mesa and Carroll disagree, and their motions for summary judgment now pend before the Court. For the following reasons, the Court grants the motions in part.[1]

**I. Background[2]**

In the dark morning hours of July 21, 2018, Officer Jena Thranum saw a Kia Sorento stopped at an otherwise deserted intersection, headlights off and rear windshield wiper

---

[1] Both parties request oral argument. The Court denies both requests because the issues are adequately briefed, and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Two body-worn cameras captured the incident from two angles. (Doc. 67-3, 67-4.) When the subject instance is unambiguously captured in an audio/video recording, the Court views those "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The following facts are recounted from that footage unless otherwise noted.

oscillating. She parked her patrol vehicle behind it and approached the driver's side; Carroll approached the passenger side. Decedent sat in the driver's seat, windows down and engine running. When asked, he admitted to drinking some that night.[3]

Thranum asked for his keys, but Decedent did not comply. Instead, he placed one hand on the steering wheel and another on the gear shifter. Carroll yelled, "Do not put that car in drive right now. Do not put that car in drive. I'm not gonna tell you again," and, at the same time, drew his taser, thrust his arm through the open passenger window, and aimed it at Decedent.

Decedent reversed the Sorento, striking Carroll's outstretched arm and knocking him to the ground before crashing into Thranum's patrol vehicle and stopping. Carroll scrambled to his feet and fired nine shots; eight of them struck Decedent. On the other side of the Sorento, Thranum had retreated in an arc to the side and behind her patrol vehicle, out of danger and out of Carroll's line of sight. After establishing that Carroll was okay, Thranum called for emergency medical services. Two seconds elapsed from the time Decedent reversed the Sorento to when Carroll fired the shots.

Decedent died from his wounds. Carroll was transported to the hospital for his injuries, which included bruises to his foot. (Doc. 67-7 at 35:21-36:16.)

A year later, Decedent's parents and estate filed a complaint against the City and Carroll, alleging claims under 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978*)*, and Arizona law. Defendants now move for summary judgment on all claims.

**II. Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When the facts at issue are unambiguously captured in an audio/video recording, the Court views those "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81. A fact is

---
[3] Testing later determined that Decedent's blood concentration neared 0.2%. (Doc. 67-11.)

- 2 -

material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Analysis**

    **A. Claim I: Unlawful Detention or Arrest Under 48 U.S.C. § 1983**

Carroll argues that Decedent was not unlawfully detained because he had probable cause that Decedent was driving under the influence and executed a traffic stop. (Doc. 67 at 9.) Plaintiffs do not contest this, and Carroll is entitled to judgment as a matter of law. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (probable cause of traffic violation justifies a traffic stop); *Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) ("Probable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest.").

    **B. Claim II: Excessive Force**

Carroll argues he is entitled to qualified immunity against Plaintiffs' excessive force claim. (Doc. 67 at 4.) An officer is entitled to qualified immunity unless a plaintiff proves

that the (1) officer violated a constitutional right and (2) the right was clearly established at the time of the challenged conduct. *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

### 1. Violation of Constitutional Right

Excessive force is subject to the Fourth Amendment's fact-sensitive reasonableness requirement, which asks a court "judge[] from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and accommodate the reality that officers face "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Deadly force has been authorized when the suspect's actions presented an imminent threat of serious physical harm to others. *See, e.g.*, *Scott*, 550 U.S. at 374, 383-84; *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010).

Whether force is objectively reasonable turns on several factors, including: (1) the severity of the crime that prompted the use of force; (2) the threat posed by a suspect to the police or others; and (3) whether the suspect was resisting arrest. *Graham*, 490 U.S. at 396. Still, this list is not exhaustive, and courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Relevant here is whether proper warnings were given before using force. *See, e.g.*, *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016).

In excessive force cases, the Ninth Circuit grants summary judgment "sparingly" because the "inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)). "Of course, if an excessive force claim turns on which two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official." *Carrillo v. City of Fresno*, No. CVF-06-634 OWW/GSA, 2007 WL 3491478, at *9 (E.D. Cal. Nov. 14, 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 216

(2001) (Ginsburg, J. concurring), *departed from on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Thus, courts must examine all the evidence in the record, including video footage, "to determine whether the officer's story is internally consistent with other known facts." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014). Courts must also "examine circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Id.* Where an officer's particular use of force is based on a mistake of fact, the Court asks whether a reasonable officer would have or should have accurately perceived that fact. *See, e.g.*, *Jenson v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir. 1998).

The first two factors are undisputed: Decedent was attempting to flee and committed an aggravated assault[4] when he reversed the Sorento and struck Carroll. Therefore, the Court turns to the most important factor, the immediacy of the threat posed by the suspect to the police or others, which the parties do meaningfully dispute. *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011).

Carroll argues that Decedent posed an immediate threat of serious bodily harm to Thranum. First, the relevant undisputed facts: the Decedent never displayed a firearm. Although the Court recognizes that a vehicle can be used as a weapon, neither Carroll[5] nor Thranum lay in the path of the Sorento after Decedent reversed. (Thranum had instead retreated behind her patrol vehicle without crossing into the path of a suspect's vehicle, just as she was trained.) "[A] simple statement by an officer that he fears for his safety, or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorele v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

But, other, material facts, are disputed. First, it is disputed whether Carroll actually harbored the mistaken belief that Thranum was in harm's way. Carroll contends that he believed Thranum lay beneath the Sorento because he lost sight of her when the vehicle

---

[4] A person commits assault by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1). The assault is aggravated if the person commits assault "knowing or having reason to know that the victim is . . . [among other things, a] peace officer." A.R.S. § 13-1204(A)(8)(a).

[5] Indeed, Carroll never argues that he himself was at risk of serious bodily harm after the Sorento reversed.

reversed. (Doc. 67 at 6.) Plaintiffs argue that a reasonable jury could find Carroll's testimony not credible based on the video footage because (1) Carroll did not check underneath the Sorento immediately after the shooting and (2) he fired the nine shots in a direction that would have risked shooting anyone who lay underneath the Sorento. (Doc. 71 at 6, 9, 11.) The Court agrees. A reasonable jury could agree with Plaintiffs' interpretation of the evidence and find that Carroll did not actually fear that Thranum was in harm's way.

Second, even if a jury were to find that Carroll actually believed Thranum was in jeopardy, it might find the belief unreasonable. From the bodycam footage, Plaintiffs point out that (1) Thranum never placed her limbs inside the Sorento; (2) Thranum followed her training by staying out of the Sorento's path as she retreated to safety behind her patrol vehicle; (3) Thranum never made any noises of pain; and (4) the Sorento was stopped when Carroll fired the nine shots. (Doc. 71 at 12.) Based on this evidence, a jury could conclude that an objectively reasonable officer would or should have accurately perceived that Thranum was not in the Sorento's path.

Based on the competing inferences a jury could draw from the bodycam footage, the Court finds that a reasonable jury could disagree as to the immediate threat factor. Summary judgment on this issue is inappropriate. *Gonzalez*, 747 F.3d at 797 (denying summary judgment where question of fact existed only as to the immediacy of threat factor).

### 2. Clearly Established Right

An officer is not entitled to qualified immunity if the law was "sufficiently clear that a reasonable official would understand what he [was] doing violate[d] [a constitutional] right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Reasonableness is not a demanding standard." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013). There need not be a prior case "directly on point," so long as there is precedent "plac[ing] the statutory or constitutional question beyond debate." *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1017 (9th Cir. 2017).

Viewing evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, as the Court must, a jury could find it unreasonable for Carroll to have believed Thranum lay beneath the Sorento after it reversed. Decedent never displayed a weapon or verbally threatened the officers and the Sorento had come to a full stop. Under this view of the facts, Decedent presented no immediate threat to Thranum or to Carroll. And, Carroll never warned Decedent that he would shoot him.

Carroll "cannot credibly argue that the prohibition on the use of deadly force under those circumstances was not clearly established" at the time of the shooting. *Garner*, 471 U.S. at 21 (holding that it is unconstitutional for an officer to shoot a suspect who does not reasonably pose a threat, even if that suspect is fleeing). Carroll's reliance on *Wilkinson* is misplaced. There, the *Wilkinson* court, reviewing the facts in the light most favorable of the plaintiff, determined that (1) the officer saw his partner "fall," (2) the officer worried that the partner had been run over and that the van would "arc" back toward the partner, and (3) the suspect vehicle was in motion at the time the shots were fired. These are different facts from the facts here, when viewed in the light most favorably to Plaintiffs. A reasonable jury could find that Carroll unreasonably believed Decedent posed a significant threat of bodily harm to Thranum. And if a jury were to make such a finding, clearly established law would not have authorized the use of deadly force. Carroll is not entitled to judgment as a matter of law on qualified immunity.

**C. Claim III: Denial of Medical Care**

Carroll argues that Decedent was not denied medical care because the officers called emergency medical services immediately after the shooting. (Doc. 67 at 11.) Plaintiffs do not dispute these facts, and under these facts, Carroll is entitled to judgment.

**D. Claim IV: Interference with familial relations**

To determine whether an officer's use of force interferes with familial relations courts apply different tests, depending on whether the officer had time to deliberate before using force. *Compare Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (looking to whether the officer had a "purpose to harm" if acting without the opportunity to deliberate

but looking to whether the officer had "deliberate indifference" if acting with the opportunity to deliberate), *with id.* at 1130 (asking whether an officer "act[ed] with a purpose to harm unrelated to legitimate law enforcement objectives" if there was no opportunity to deliberate). But, because either test asks about Carroll's intent in using force, which the parties genuinely dispute, this claim survives summary judgment. Similarly, whether punitive damages are available for this claim also turns on Carroll's intent; those damages survive summary judgment.

### E. Claims V-VII and X(f)-(g): The *Monell* and *Monell*-style Claims

#### 1. Claim V: Ratification

To survive summary judgment on the ratification claim, Plaintiffs must present evidence that a City policymaker "made a deliberate choice to endorse" Carroll's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). "[M]ere refusal to overrule a subordinate's completed act does not constitute approval." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Indeed, ratification resembles an affirmative agreement, *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999), requiring municipal approval to be "express[]," *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). Because Plaintiffs point to no evidence that the City ratified Carroll's conduct in any express way or affirmatively agreed with it, no genuine dispute of fact exists, and the City is entitled to judgment as a matter of law.

#### 2. Claims VI and X(f)-(g): Failure to Train

To establish a *Monell* or Arizona failure to train claim, Plaintiffs must identify a specific deficiency in the City's training of Carroll and show that the deficiency directly caused the constitutional deprivation. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gibson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The failure to train must rise to "deliberate indifference to the rights of persons with whom the [untrained employees] came into contact," which usually requires proving a "pattern of violations." *Connick*, 563 U.S. at 61.

Plaintiffs point to three pieces of evidence to prove failure to train: (1) "Carroll's use of deadly force against Lopez"; (2) "the high number of threshold-related incidents preceding the Lopez shooting"; and (3) that Carroll allegedly lied about serving as an Army Ranger. (Doc. 73 at 7.) But Carroll's conduct at the subject incident does not identify a "specific deficiency" in the City's training because an officer can be well trained and yet act unconstitutionally. And the mere number of "threshold-related incidents" does not indicate whether the uses of force were improper, and Plaintiffs' expert conceded as much: "[the incidents] could all be reasonable." (Doc. 68-1 at 15.) Finally, Plaintiffs do not explain how Carroll's untruthfulness caused the force against Decedent. Plaintiffs fail to meet their burden to identify a specific deficit in the City's training and to show how that training caused Carroll's actions, much less how it amounted to "deliberate indifference." *Connick*, 563 U.S. at 61.

### 3. Claim VII: Unconstitutional Customs, Practices, or Policies

To survive summary judgment on an unconstitutional customs, practices, or policies claim, a plaintiff must show (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). "[A] single instance" of unconstitutional conduct may suffice if "taken pursuant to a municipal policy." *Long v. Cnty of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiffs offer two examples, that the City (1) failed to discipline Carroll after his "repeated use-of-force incidents" and (2) ignored Carroll's untruthfulness. (Doc. 73 at 8.) But, as above, Plaintiffs have not shown that the use-of-force incidents were unlawful and thus subject to discipline; neither have they shown how Carroll's alleged untruthfulness was the "moving force behind" the shooting. The City is entitled to judgment as a matter of law.

### F. Claims VIII-X(a)-(e), (h): State Law Claims

Defendants marshal procedural and substantive against the state law claims collectively and individually.

### 1. Procedural Challenge

#### a. Proper Notice as to Carroll

First, Carroll argues that all state law claims against him must be dismissed because Plaintiffs did not strictly comply with A.R.S § 12-821.01. (Doc. 67 at 12.) That statute requires a plaintiff with claims against a public employee "to deliver or ensure delivery of the Notice of Claim" to the public employee within 180 days after the cause of action accrues. A.R.S § 12-821.01. For a notice of claim, a cause of action accrues according to the discovery rule, *Thompson v. Pima Cnty.*, 243 P.3d 1024, 1028 (Ariz. Ct. App. 2010) (applying the discovery rule to a notice of claim analysis), which provides that an action accrues when a plaintiff "possesse[s] a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Doe v. Roe*, 955 P.2d 313, 323 (Ariz. 1998). In other words, once a plaintiff comprehends a "what" and a "who" "in such a way that a reasonable person would be on notice to investigate," the action accrues. *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002).

Plaintiffs contend that they delivered a notice of claim to Carroll on July 17, 2019, and that it was timely because they delivered the notice as soon as they learned that Carroll fired the shots that killed Decedent. Carroll argues this was too late; the cause of action accrued on the date of the shooting, and he was not served within 180 days of the shooting. The Court agrees. Learning of the shooting itself put Plaintiffs on notice to investigate. *Walk*, 44 P.3d at 996 (action accrues when a reasonable person would have been on notice to investigate). Although Plaintiffs argue that they did not, in fact, learn Carroll's identity until much later, they fail to explain why they could not have learned his identity sooner with due diligence. The state law claims against Carroll must be dismissed.

#### b. The Estate as Proper Party

Defendants argue that the Estate must be dismissed as a party to the wrongful death claims (Claims IX and X) because A.R.S. § 12-612(A) prohibits a decedent's estate from

bringing wrongful death state law claims if any of the statutory beneficiaries—here, Decedent's parents—survived the Decedent. (Doc. 67 at 13.) Plaintiffs do not contest this, and the Estate must be dismissed from Claims IX and X as a matter of law.

### 2. Substantive Challenges

As noted above, the state law claims against Carroll are dismissed. Accordingly, the remainder of this analysis concerns Plaintiffs' state law claims against the City.

#### a. Claim VIII: False Arrest

As explained above, it is undisputed that there was probable cause to detain Decedent for a traffic stop when Decedent did not use his headlights at night, admitted to drinking, and did not follow officer commands. Thus, any detention was justified, and the City is entitled to judgment. *See Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975) (noting that an unlawful detention is an essential element of false arrest and false imprisonment).

#### b. Claim IX: Wrongful Death—Battery

The City seeks summary judgment on Claim IX on the theory that the use of deadly force was justified. (Doc. 67 at 9.) But whether deadly force was justified turns on whether Carroll reasonably believed that it was necessary (1) to defend himself or another from what he reasonably believes is an immanent use of deadly force or (2) to effect an arrest or prevent escape in certain situations. A.R.S. § 13-410(C). Again, whether Carroll reasonably believed himself or Thranum subject to the imminent use of deadly force is genuinely disputed. And by the time Carroll used force, Plaintiffs argue, the vehicle had come to a complete stop and Decedent had not resisted arrest, genuinely disputing whether it was reasonable to believe deadly force was necessary. The City is vicariously liable for the acts of Carroll that occurred during the course and in the scope of his employment as a City Police officer. *See* A.R.S. § 12-2506. The City is not entitled to summary judgment on Claim IX.

#### c. Claim X(a)-(e), (h): Wrongful Death[6]

---

[6] The Complaint does not include a subparagraph (d). (Doc. 1 at 26.)

- 11 -

The City argues that Arizona law does not recognize the wrongful-death theory underlying Claim X(a)-(c) and (h). In cases advancing a wrongful death claim based "solely on an officer's intentional use of physical force," a plaintiff may only advance a theory of intentional use of force and not a negligent use of intentional force. *Ryan v. Napier*, 425 P.3d at 236-37 (Ariz. 2018); *see also Liberti v. City of Scottsdale*, 816 F. App'x 89, 91 (9th Cir. 2020) (applying *Napier* to wrongful-death actions). Here, subclaims (a) through (e) all allege a negligent use of intentional force or the negligent evaluation of whether to use intentional force. (Doc. 1 at 26.) Plaintiffs argue that Carroll's allegedly negligent conduct precludes any justification defense, and therefore the claims alleging the negligent use of force survive summary judgment. (Doc. 71 at 16.) But bringing a claim and attacking a defense are two separate things. Plaintiffs cannot maintain a vicarious liability claim against the City when the underlying theory alleges the negligent use of intentional force. The City is entitled to judgment as a matter of law on Claims X(a)-(c), (h).

Claim X(e) alleges the failure to provide prompt medical care to decedent. As stated above, it is undisputed that the officers immediately radioed for medical assistance after Carroll shot Decedent. The City is entitled to judgment as a matter of law.

**IV. Conclusion**[7]

Carroll is entitled to judgment on Claims I, III, and VIII-X(a)-(e), (h) are dismissed with prejudice. Carroll is not entitled to judgment on Claim II and IV (including punitive damages). The City is entitled to judgment on Claims V-VIII, and X. The City, is not entitled to judgment on Claim IX. The Estate is dismissed from IX and X. Therefore,

**IT IS ORDERED** that Defendants' motions for summary judgment (Docs. 67 and 68) are **GRANTED IN PART** and **DENIED IN PART**, as outlined in this order.

/ / /

/ / /

/ / /

---

[7] This order is amended to reflect the corrected Roman numerals. Accordingly, Defendant's Rule 60(a) Motion (Doc. 82) is GRANTED.

- 12 -

**IT IS FURTHER ORDERED** that the parties shall participate in a telephonic trial scheduling conference before Judge Douglas L. Rayes on **February 17, 2022, at 11:00 a.m**. Call-in instructions will be provided to the parties via separate email.

Dated this 2nd day of February, 2022.

Douglas L. Rayes
United States District Judge