**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Lopez et al., | No. CV-19-04764-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

On August 23, 2024, Defendants City of Mesa and Heath Carroll ("Defendants") filed a motion for Rule 37 Sanctions against Plaintiffs Estate of Anthony Lopez, Patricia Lopez, and Caesar Lopez ("Plaintiffs") for allegedly failing to comply with the requirements of the Mandatory Initial Discovery Pilot ("MIDP") program and the Federal Rules of Civil Procedure. (Doc. 109, "Mot"). Plaintiffs filed a response on September 6, 2024 (Doc. 111) and Defendants filed a reply on September 13, 2024 (Doc. 114). For what follows Defendants' motion will be granted in part and denied in part.

**I.     Background**

This case arises out of the shooting of Anthony Lopez ("Decedent") by Officer Heath Carroll. Plaintiffs, who are the parents and estate of Decedent, argue the shooting of Decedent was unjustified.

On July 19, 2019, this case was selected for the MIDP program, which orders parties to the litigation to provide mandatory initial discovery before initiating further discovery. (Doc. 3). On February 26, 2020, the Court held a Rule 16 Scheduling Conference. (Doc.

27). At the Rule 16 Conference, the parties stated their MIDP obligations were complete and set a deadline of August 15, 2020 for fact discovery and final supplementation of MIDP responses. (Doc. 28). The completion of fact discovery and supplemented MIDP responses was later extended until October 15, 2020. (Doc. 36). Defendants' current counsel did not participate in discovery. They joined this case on July 15, 2024, and filed this motion on August 23, 2024. On September 25, 2024, the Court held a Status Conference and briefly discussed the issues in this motion. (Doc. 119).

Defendants argue Plaintiffs should be sanctioned because they have not complied with discovery obligations under the MIDP Program, the Federal Rules of Civil Procedure, and because of information discovered in the August 17, 2020 deposition of Patricia Lopez requires sanctions. Plaintiffs respond Defendants' motion is procedurally improper given (1) discovery in this case closed on October 15, 2020, (2) Defendants did not initiate any meet and confer efforts during the discovery period, and (3) the Court's scheduling order instructs the parties to not file written discovery motions without leave of court. (Docs. 28, 54).

Pursuant to Rule 37(b)(2) and Rule 37(c), Defendants ask for the following sanctions:

(1) That Plaintiffs be ordered to produce all responsive material within 30 days and that all objections to the material's admissibility at trial be deemed waived;

(2) That the Court order a forensic examination of [D]ecedent's phone at Plaintiffs' expense;

(3) That the Decedent's Estate be precluded from recovering hedonic damages;

(4) That Plaintiffs be precluded from recovering wrongful death and therefore, that the state law claim be dismissed; and

(5) That Defendants be reimbursed their fees and costs in bringing this Motion.

**II.    Legal Standard**

Federal Rule of Civil Procedure 37(b) provides various sanctions for a party's failure to obey a court's discovery order including:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii)   striking pleadings in whole or in part;
(iv)   staying further proceedings until the order is obeyed;
(v)    dismissing the action or proceeding in whole or in part;
(vi)   rendering a default judgment against the disobedient party; or
(vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b). "The scope of sanctions for failure to comply with a discovery order is committed to the sound discretion of the district court." *Payne v. Exxon Corp.*, 121 F.3d 501, 510 (9th Cir. 1997). However, "Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099.

Federal Rule of Civil Procedure 37(c)(1) provides:

**(1) Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) contains an express exception under which a failure to provide timely information may be excused if the failure was "substantially justified" or "harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). To guide the determination of whether substantial justification

and/or harmlessness exist, courts evaluate the following factors: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v Brodeur.*, 41 F.4th 1185, 1191-92 (9th Cir. 2022) (internal citation omitted).

### III.  Discussion

#### A.  Preliminary Issues

As an initial matter, Plaintiffs argue Defendants' motion is procedurally defective given discovery closed in March 2020 and Plaintiffs served amended discovery responses in April 2020 with no objection from Defendants' counsel at that time. Defendants respond that they promptly notified Plaintiffs of deficiencies after taking over the case on July 23, 2024 to no response (Doc. 122 Ex. 1) and that neither Rule 37 nor the Scheduling Order imposes any prerequisites on moving for discovery sanctions.

The Court agrees with Defendants that Rule 37 contemplates no time limit for sanctions. However, the Court will consider potential sanctions in light of Defendants' failure to meet and confer in the discovery period.

#### B.  Alleged MIDP Failures

Defendants allege Plaintiffs violated several MIDP program discovery obligations. During the initial stages of the MIDP program, discovery responses are called for by Court order, rather than being served by an opposing party. After the mandatory initial discovery responses have been provided, additional discovery proceeds under the Federal Rules of Civil Procedure and the Court's Scheduling Order. However, a party's MIDP duties are continuous, and each party must serve supplemental responses when new or additional information is discovered or revealed.

As relevant here, this case's MIDP Order states, "[p]arties must provide the requested information as to facts that are relevant to the claims and defenses in this case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses." (Doc. 3 at 4). Additionally, parties are

required to "[l]ist the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses" and "[p]rovide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered." (*Id*. at 5).

Defendants have argued several of Plaintiffs' disclosures violated these duties. The Court will consider each of Plaintiffs' alleged failures in turn.

1. <u>Epilepsy Records</u>

Defendants argue Decedent's epilepsy medical records were not disclosed prior to Plaintiff Patricia Lopez's deposition in violation of Plaintiffs' MIDP duties. Defendants contend the Decedent's epilepsy impacts his life expectancy and anticipated quality of life and is relevant to Plaintiffs' claimed hedonic damages. Defendants also argue this omission bears directly on the case because Plaintiffs' police procedures expert opines a reasonable alternative to the shooting was for the officers to pursue Decedent with flashing lights that are a known trigger for seizures.

Plaintiffs respond they did not possess copies of Decedent's medical records, nor did Defendants subpoena or request Plaintiffs produce them. Plaintiffs add that Patricia Lopez's deposition contained detailed information about (1) the frequency of Decedent's seizures, (2) symptoms witnessed, (3) his prescription medication, and (4) the name of his treating neurologist.

Because (1) Plaintiffs disclosed Decedent had a seizure disorder in their MIDP response (Doc. 114-1), (2) Defendants did not subpoena medical records, and (3) Plaintiffs did not have access to Decedent's medical records, the Court finds Plaintiffs' alleged withholding of Decedent's epilepsy records did not violate their MIDP duties.

2. <u>Decedent's Facebook Page</u>

Defendants argue Decedent's Facebook page, which included posts about his alcohol, drug use, and involvement with the criminal justice system, was withheld by

- 5 -

Plaintiffs in violation of their MIDP duties to provide relevant ESI and information pertinent to Plaintiffs' claimed damages. Defendants argue Patricia Lopez had access to Decedent's Facebook page given posts she made on July 26 2018, August 15, 2018, July 10, 2018, and July 21, 2019.

Plaintiffs respond that Patricia Lopez made her last post on Decedent's Facebook page on July 21, 2019 and did not have access to Decedent's Facebook page when Plaintiffs served discovery responses in March and April of 2020. Moreover, Plaintiffs argue Decedent's criminal history and drug and alcohol use is irrelevant to Plaintiffs' wrongful death damages and Decedent's loss of enjoyment damages.

The Court finds Plaintiffs failed to comply with their ESI obligations by not providing information about Decedent's Facebook page. However, the Court finds Defendants were not substantially prejudiced by this failure given pertinent information on the Facebook page is now in their possession and only tangentially relates to claimed damages. The Court finds nondisclosure of Decedent's Facebook page does not warrant sanctions.

3. Memorial Website

Defendants also claim Plaintiffs did not disclose Decedent's memorial website, containing Decedent's obituary, photos, comments from friends, family, and a video. Plaintiffs respond they did not manage nor maintain the memorial website.

Defendants have not established any reason the memorial website is relevant to the Plaintiffs' MIDP obligations or any substantial prejudice resulting from nondisclosure. The Court finds nondisclosure of the memorial website did not violate Plaintiffs' MIDP duties.

4. Computation of Damages

Defendants contend Plaintiffs did not provide sufficient computation of damages or documents supporting their computation as required under MIDP. Plaintiffs have provided their MIDP response, state they already advised Defendants in their initial tort claim they seek damages in excess of $3.5 million, and argue no specific guideposts exist to quantify wrongful death factors.

In their MIDP responses, Plaintiffs stated:

> Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Plaintiffs disclose that they are entitled to recover damages in the form of, inter alia, actual damages, mental anguish and humiliation, emotional distress, punitive damages, attorneys' fees, costs, and interest. The loss of a life is difficult to quantify. The following will be used in the calculation of Plaintiffs' damages:
>
> 1. The nature, extent, and duration of the injury;
> 2. The pain, discomfort, suffering, emotional and mental distress, anxiety already experienced and reasonably probable to be experienced in the future as a result of the injury;
> 3. Reasonable expenses of necessary funeral and burial expenses incurred by the Plaintiffs and any medical bills relating to medical treatment rendered to the decedent as a result of this incident;
> 4. Lost earnings to date, and any decrease in earning power or capacity in the future;[1]
> 5. Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship, including support, guidance, and financial assistance; and
> 6. Loss of enjoyment of life

(Doc. 122-2 Ex. 7).

The Court finds Plaintiffs' responses were sufficient to meet their MIDP computation requirements.

**C. Alleged Inaccurate and Incomplete Discovery Responses**

The Court considers Defendants' allegations regarding Plaintiffs' discovery responses.

1. <u>Request for Production No. 2: Photographs and Video</u>

Defendant's Request for Production ("RFP") No. 2 asked Plaintiffs to produce "all photographs or video of Anthony Lopez taken from August 1, 2015 to the present." (Doc. 122 Ex. 8 at 4). Plaintiffs objected to the request as overly broad, unduly burdensome, vague and ambiguous, potentially irrelevant, an invasion of privacy, and "a fishing expedition." While preserving these objections, Plaintiffs provided several photos to

---

[1] Plaintiffs have since withdrawn their claim for economic damages.

- 7 -

Defendants. Following these discovery responses, Patricia Lopez stated in her August 17, 2020 deposition that she possessed Decedent's phone. (Doc. 122-2 Ex. 1 at 46:13-14).

Defendants argue Plaintiffs' productions were incomplete because they omit photos Patricia Lopez had access to on the Decedent's Facebook page and Decedent's phone. Plaintiffs respond that Patricia Lopez produced photographs of Decedent in her actual possession, on her phone, or physical print photographs.

Given Plaintiffs informed Defendants they had objections, Defendants' knowledge of Decedent's phone, and failure to meet and confer to request further photos in the discovery period and seek relief from the Court, the Court finds Plaintiffs did not violate their discovery obligations. However, the Court will order Plaintiffs to provide Decedent's phone to Defendants if they have not already done so.

2. <u>Request for Production No. 4: Communications To/From Decedent</u>

Defendants' RFP No. 4 states: "Please produce all documents, correspondence, emails, text messages, and other communications to and/or from Anthony Lopez." (Doc. 122-2 Ex. 8 at 4). Plaintiffs objected to the request as overly broad, unduly burdensome, an invasion of privacy, and seeking potentially irrelevant documents. Plaintiffs further responded they were unable to produce Patricia Lopez's messages on her previous phone. Following these discovery responses, Patricia Lopez stated in her August 17, 2020 deposition that she possessed Decedent's phone. (Doc. 122-2 Ex. 1 at 46:13-14).

Defendants argue Patricia Lopez should have searched Decedent's cell phone for messages. Plaintiffs respond that Defendant City of Mesa could have searched Decedent's cell phone when it was in their possession for several weeks after the shooting. In Defendants' reply, they contend Defendants did not have a legal right to search the cell phone when it was in their possession and did not have notice of Plaintiffs' intent to sue when it returned the phone to Plaintiffs. Defendants add that Plaintiffs had an independent legal obligation to search the cell phone when it was returned to them.

Given Plaintiffs' stated discovery objections and knowledge that Defendants previously held Decedent's phone, the Court finds Plaintiffs were not negligent in failing

to provide Decedent's phone to Defendants. Additionally, Plaintiffs' omission was substantially harmless given Defendants' awareness of Decedent's phone and failure to meet and confer to request the phone or seek relief from the Court to search the phone during the discovery period. The Court will order Plaintiffs provide the phone to Defendants if they have not done so, but will award no further sanction on this allegation.

3. <u>Interrogatory No. 2: The Decedent's Activities</u>

Interrogatory No. 2 states: "Give a detailed account of your knowledge and understanding of [Decedent's] activities during the 48-hour period immediately preceding his death, including all communication you had with [Decedent] during that time period and his use of any alcohol, drugs, or medications." (Doc. 122-2 Ex. 5 at 2). Plaintiffs objected to the request on the grounds of privacy, information protected by the Health Insurance Portability and Accountability Act of 1996, physician-patient privilege and/or psychotherapist-patient privilege, overly broad and unduly burdensome, and not reasonably calculated to lead to discovery of admissible evidence. While preserving these objections, Plaintiff Patricia Lopez provided,

> On July 19, 2018, Anthony Lopez went to Raceway Car Wash to follow up on a job application he had submitted. Anthony Lopez also went to buy groceries for Plaintiff Patricia Lopez with a friend, and his friend drove. On July 20, 2018 Anthony Lopez walked to the Circle K on Broadway & Dobson to buy some snacks. Anthony Lopez stayed home during the day on that date and played video games in his room. Patricia Lopez told him goodnight and that she loved him. That was the last time that Patricia Lopez saw Anthony Lopez alive.

(*Id.*).

Defendants contend Plaintiff Patricia Lopez made several notable omissions answering this interrogatory. First, Defendants argue the answer omits Decedent's visit to a marijuana dispensary at 3:13 PM using Patricia Lopez's vehicle, which Decedent was driving at the time of the shooting. Defendants opine because Patricia Lopez's testimony stated Decedent did not have a driver's license and had never driven her vehicle prior to the shooting, Patricia Lopez either took Decedent to the dispensary herself or Decedent

- 9 -

took her vehicle without her knowledge in the middle of the day. Second, Defendants argue Plaintiffs omitted information that Decedent was looking to play pool on the night of his death, which could help identify individuals who were with Decedent on the night of his death who potentially observed him drinking.

Plaintiffs respond Patricia Lopez had no reason to know Decedent's visit to the dispensary because her car was impounded after Decedent's death, giving her no opportunity to view the dispensary receipt. Plaintiffs also argue Patricia Lopez gave a recorded interview to the Mesa Police Department on July 21, 2018, when her memory of events was better than her deposition and discovery responses. In this interview, Patricia Lopez stated Decedent went to play pool on the night of the shooting and returned home that night before she went to bed. Plaintiffs additionally contend Decedent's visit to play pool was irrelevant to his death and Defendants already have necessary information about Decedent's alcohol consumption from his toxicology report at the time of the shooting.

The Court finds Patricia Lopez's answer was incomplete in omitting Decedent's visit to play pool, but Defendants have shown no substantial prejudice given all omitted information to this interrogatory was already testified by Patricia Lopez, unknown to Patricia Lopez, or already known by Defendants. The Court will award no sanction on this allegation.

4. <u>Interrogatory No. 5 and Request for Production No. 5 Decedent's Social Media</u>

Defendants' Interrogatory No. 5 states: "Identify any and all social media accounts including, but not limited to, blog entries, web pages, Twitter, Facebook, Instagram, Google+ and/or My Space, that you and/or [Decedent] owned, created or participated in from July 2014 to the present date, including each user ID and password necessary to access each, and whether such content still exists or has been deleted since its submission." (Doc. 122 Ex. 5 at 6-7). Plaintiffs objected to the interrogatory as overly broad and burdensome, seeking inadmissible evidence, and a fishing expedition. Without waiving objections, Plaintiff Patricia Lopez responded:

> Plaintiff believes that [Decedent] may have had a Facebook account, which may or may not still exist. Plaintiff does not have the user ID or password to her son's

account. Plaintiff Patricia Lopez maintains a Facebook account. On the basis of the foregoing objections, Plaintiff will not produce her password to her account.

(*Id.*).

Defendants' Request for Production No. 5 states,

Please produce a copy of all notes, messages, correspondence, voicemails, diaries, logs, journals, diagrams, renderings, emails, text messages, social media (including, but not limited to, Facebook, Twitter, Instagram, and Pinterest) correspondence, posts, messages, photographs and video, created before, during, or after the incident that relates in any way to: the incident, the incident scene, your injuries, facts related to the incident, responders to the incident scene, witnesses, parties, any description of or reference to the incident alleged in the complaint, and any injuries referenced in your Complaint, Mandatory Initial Discovery Responses, or disclosure statements

(Doc. 122-2 Ex. 8 at 5). Plaintiffs objected to the request as overly broad, unduly burdensome, vague and ambiguous, and an invasion of privacy. Without waiving objections, Plaintiffs responded, "After a diligent search and reasonable inquiry, Plaintiffs are unable to locate any documents responsive to this Request that have not already been produced pursuant to Plaintiffs' initial disclosures. Plaintiffs reserve their right to amend or supplement this response." (*Id.*).

Defendants argue Plaintiffs failed to produce Decedent's Facebook page, memorial website, or Snapchat account. Plaintiffs respond Ms. Lopez made her last post on Decedent's Facebook page on July 21, 2019 and did not have access to Decedent's Facebook when she served discovery responses in March and April of 2020. Plaintiffs add they had no knowledge of Decedent's Snapchat account and did not communicate with Decedent on Snapchat. Lastly, Plaintiffs again argue they did not manage or maintain Decedent's memorial website.

The Court finds Plaintiffs did fail, but were not reckless in failing to provide the Facebook and Decedent's memorial page pursuant to these requests. And, given Plaintiffs' stated objections, Defendants' failure to timely meet and confer in the discovery period, and Defendants' current access to this information, the Court also finds Plaintiffs' responses were substantially harmless. The Court will award no sanction on this allegation.

1       5. Request for Admission No. 4: Felony Probation

Defendants' Request for Admission No. 4 asked Plaintiffs to "admit that Decedent knew on July 21, 2018, that he was on felony probation pursuant to a plea agreement for a prior crime." (Doc. 122 Ex. 10 at 2). Plaintiffs objected to the Request as being compound and calling for speculation, but responded "Deny subject to the foregoing objections." (*Id.*).

Defendants argue Plaintiffs should have admitted this request because Decedent posted on his Facebook page 30 days before his death that he was going to see his "P.O." (Doc. 122-2 Ex. 1 at 2) and a receipt for TASC urine drug testing has been produced, which is a court ordered process and part of probation. (Doc. 122-2 Ex. 9). Plaintiffs respond that the question was compound in asking what Decedent knew, whether the probation was felony probation, whether the probation was the result of a plea agreement, and whether Decedent was still on probation at the time of his death. Plaintiffs add Defendant City of Mesa has information regarding Decedent's probation and Plaintiff Patricia Lopez has testified about Decedent's felony conviction, her lack of awareness as to the terms, charges or any paperwork regarding Decedent's probation, and stated she drove Decedent to the Probation Department multiple times.

Given Defendants' present knowledge of Decedent's felony probation and Defendants' failure to meet and confer to amend responses in the discovery period and seek relief from the Court, the Court finds Plaintiffs did not violate their discovery obligations on this allegation.

**D. False Deposition Testimony**

Defendants have argued Plaintiff Patrica Lopez gave false deposition testimony when asked about the photographs she possessed in the following excerpt:

> Ms. Alvarado: In terms of when I looked through the photos, most of them seemed to be from when Anthony was a baby, a toddler, a young kid playing baseball. ***Did you have any photos of him from the last two years of his life?***
> Plaintiff: He did not like to take pictures.
> Ms. Alvarado: Okay. So the answer is, no, you don't---
> A: ***No—***
> Q: Have any? Okay. Have you ever checked his phone to see if there's any

- 12 -

      photos of him on that phone?
A: No.
Q: So, to your knowledge, is that photograph of you and Anthony at the beach the most recent photograph you have of him prior to his death?
A: I have a couple that were given to me by friends.
Q: How—what was Anthony doing in those photos?
A: They are just selfies.

(Doc. 122 Ex. 2 at 65).

Defendants argue Patricia Lopez gave misleading responses in her testimony given her direct access to Decedent's photographs on Facebook and the public memorial website. Plaintiffs respond that Patrica Lopez produced photographs she had in her possession on her phone, did not have access to the Facebook page at the time of her deposition, and did not create or maintain the memorial website. Thus, Plaintiffs did not violate discovery requirements.

The Court finds Patricia Lopez's deposition responses were not intentionally incomplete, inaccurate, or misleading.

### E.  Preclusion of Consortium Damages and State Law Claims

Defendants also argue Plaintiffs should not be able to collect post-death hedonic damages under U.S. Supreme Court precedent and Plaintiffs' state law claim fails under Arizona Law. Plaintiffs respond that survival damages are recoverable and Defendants' state law objections are an attempt to bring a second motion for summary judgement. The Court agrees, and will deny these requests without prejudice assuming it has relevance before trial.

### F.  Conclusion

The Court finds Plaintiffs have not committed sanctionable conduct in their discovery responses under Rule 37. However, the Court will order Plaintiffs to provide Defendants with the phone of Decedent Anthony Lopez within 10 days of the entry of this order.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Rule 37 Sanctions (Doc. 122) is

- 13 -

1  **GRANTED IN PART** and **DENIED IN PART**

2  **IT IS FURTHER ORDERED** Plaintiffs are to provide Defendants within 10 days
3  the phone of Decedent Anthony Lopez if they have not already done so.

4  **IT IS FURTHER ORDERED** the parties should be advised that the trial date of
5  February 25, 2025 and other pretrial dates set forth in the September 17, 2024 order (Doc.
6  115) are firm.

7  Dated this 13th day of November, 2024.

_____
Honorable Roslyn O. Silver
Senior United States District Judge